UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRIAN R. BOWMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-CV-01484-NCC |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Brian R. Bowman ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. Plaintiff has filed a brief in support of the Complaint (Doc. 10), Defendant has filed a brief in support of the Answer (Doc. 13), and Plaintiff has filed a reply brief (Doc. 14). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 6).

## I. PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB on March 9, 2020 (Tr. 155-58). Plaintiff was initially denied on April 13, 2020, and upon reconsideration on September 3, 2020 (Tr. 58-74, 76-80, 88-93). He filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 94-110). After a hearing, by decision dated March 29, 2021, the ALJ found Plaintiff not disabled (Tr. 8-26). On October 22, 2021, the Appeals Council denied Plaintiff's

request for review (Tr. 1-5). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.  DECISION OF THE ALJ

The ALJ determined that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2019, and that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of disability on August 1, 2019 through his date last insured for disability insurance benefits on December 31, 2019 (Tr. 13). The ALJ found Plaintiff had the severe impairments of diabetes mellitus with stage III chronic kidney disease (CKD), diabetic retinopathy, peripheral neuropathy and hypertension, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13-14). After careful consideration of the entire record, the ALJ determined Plaintiff had the residual functional capacity to perform the full range of sedentary work (Tr. 14). The ALJ found that Plaintiff was unable to perform any of his past relevant work, but that there were sedentary jobs that existed in significant numbers in the national economy that he could have performed (Tr. 19). Thus, the ALJ concluded that Plaintiff was not under a disability at any time from August 1, 2019, his alleged onset date of disability, through December 31, 2019, his date last insured for disability insurance benefits (Tr. 20).

## III.  LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting

2

*Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id*. "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id*.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national

economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant."  *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder.  *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004).  Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  *Krogmeier*, 294 F.3d at 1022.

## IV.  DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises two issues.  First, Plaintiff argues that the ALJ should have obtained testimony from a medical expert to determine whether Plaintiff equaled a listed impairment (Doc. 10 at 4).  Second, Plaintiff argues that the RFC failed to include Plaintiff's need to elevate his legs (*id.* at 5).  The Court addresses each argument as follows and ultimately finds that the ALJ's decision is supported by substantial evidence and should be affirmed.

### A.  Listing

"[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary."  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).  "Thus, if the ALJ determines at step three of the sequential analysis that a claimant has a listed impairment, the claimant 'must be held disabled, and the case is over.'"  *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (quoting *Jones v. Barnhart*, 335 F.3d 697, 699 (8th Cir. 2003)).

"Merely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing."  *McCoy v. Astrue*, 648 F.3d 605, 611–12 (8th Cir. 2011).  "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify."  *Zebley*, 493 U.S. at 530.  The listings "exclude claimants who have listed impairments in a form severe enough to preclude *substantial* gainful activity, but not quite severe enough to meet the listings level—that which would preclude *any* gainful activity."  *Id.* at 534.

A plaintiff "bears the burden at step three of showing that his impairments meet or equal an impairment described in the listings."  *Cronin v. Saul*, 945 F.3d 1062, 1066–67 (8th Cir.

5

2019). "To establish equivalency, a claimant must present medical findings equal in severity to all the criteria for the one, most similar, listed impairment." *Id.* at 1067.

Here, the listing at issue provides:

6.05 Chronic kidney disease, with impairment of kidney function, with A and B:

A. Reduced glomerular filtration evidenced by one of the following laboratory findings documented on at least two occasions at least 90 days apart during a consecutive 12–month period:

> 1. Serum creatinine of 4 mg/dL or greater; or
> 2. Creatinine clearance of 20 ml/min. or less; or
> 3. Estimated glomerular filtration rate (eGFR) of 20 ml/min/1.73m$^2$ or less.

AND

B. One of the following:

> 1. Renal osteodystrophy (see 6.00C3) with severe bone pain and imaging studies documenting bone abnormalities, such as osteitis fibrosa, osteomalacia, or pathologic fractures; or
> 2. Peripheral neuropathy (see 6.00C4); or
> 3. Fluid overload syndrome (see 6.00C5) documented by one of the following:
>
>> a. Diastolic hypertension greater than or equal to diastolic blood pressure of 110 mm Hg despite at least 90 consecutive days of prescribed therapy, documented by at least two measurements of diastolic blood pressure at least 90 days apart during a consecutive 12–month period; or
>> b. Signs of vascular congestion or anasarca (see 6.00C6) despite at least 90 consecutive days of prescribed therapy, documented on at least two occasions at least 90 days apart during a consecutive 12–month period; or
>
> 4. Anorexia with weight loss (see 6.00C7) determined by body mass index (BMI) of 18.0 or less, calculated on at least two occasions at least 90 days apart during a consecutive 12–month period.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The ALJ found that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13-14).  The ALJ stated as follows:

> The claimant's representative acknowledged at the hearing his laboratory reports did not meet listing level severity for chronic kidney disease prior to his date last insured for benefits, but he argued the claimant's lower extremity edema beginning in September 2019 is sufficient to equal the listing for chronic kidney disease. No medical opinion has suggested the claimant's impairment equals listing level severity, and the undersign lacks the authority to make such a finding. The State agency experts likewise did not make such a finding despite records reviewed well after the claimant's date last insured, having exhibits through 13F available (Exhibits 1A, 3A).

Tr. 15-16).  Reviewing Plaintiff's eGFR results, the ALJ concluded "his condition was not at listing level during the relevant period" (Tr. 17).

In support of his argument, Plaintiff cites his eGFR of 26 on December 11, 2019, consistent with stage 4 Chronic Kidney Disease (CKD), and his treating nephrologist's statement on November 27, 2019 that he was at stage 4 CKD.  *See* Doc. 10 at 4 (citing Tr. 238-40). Plaintiff further cites significant peripheral edema evident from at least June 2019 through his date last insured, which Plaintiff argues is equal in severity to the symptoms addressed under peripheral neuropathy.  *See* Doc. 14 at 2-3 (citing Tr. 664, 348, 354, 358, 684, 909, 939, 240, 271, 374).

Even assuming Plaintiff's peripheral edema was equivalent to peripheral neuropathy under subsection B of the listing for CKD, Plaintiff was still required to present medical findings that met or equaled in severity one of the criteria listed in subsection A.  A review of Plaintiff's medical records shows that Plaintiff's creatinine never got up to 4 mg or greater and his eGFR never got down to 20 ml or less during the relevant period of August 1, 2019 through December 31, 2019.  *See* Tr. 281, 283 (creatinine was 2.77 and eGFR was 26 on December 11, 2019); Tr.

7

242-43 (creatinine was 3.05 and eGFR was 23 on December 10, 2019); Tr. 246 (creatinine was 2.32 and eGFR was 32 on December 3, 2019); Tr. 374 (eGFR was 27 on September 30, 2019); Tr. 680 (creatinine was 2.10 and eGFR was 34 on September 13, 2019); Tr. 325 (creatinine was 1.90 and eGFR was 40 on September 3-4, 2019); Tr. 680 (creatinine was 1.65 and eGFR was 45 on August 8, 2019).

Plaintiff does not identify any medical findings equal in severity to creatinine of 4 mg or greater, eGFR of 20 ml or less, or creatinine clearance of 20 ml or less on at least two occasions at least 90 days apart during a consecutive 12–month period, nor does Plaintiff suggest how a medical opinion would have established such equivalence. *See also Roffle v. Saul*, No. 4:19-CV-02672-NCC, 2021 WL 1143886, at *7 (E.D. Mo. Mar. 25, 2021) ("[A]n ALJ is not required to obtain medical expert evidence or medical support staff input prior to making a step 3 finding that a claimant's medical impairment does not medically equal a listed impairment if the ALJ believes that the evidence does not reasonably support a finding that the claimant's impairment medically equals a listed impairment.") (citing SSR 17-2p); HALLEX I-2-5-34, 1994 WL 637370 (last updated Jan. 21, 2020) (advising that an ALJ has discretion in deciding whether to obtain a medical expert opinion to aid in determining whether an impairment meets a listed impairment). The Court finds no error in the ALJ's failure to obtain testimony from a medical expert to determine whether Plaintiff equaled the CKD listing.

In addition, the Court will not consider Plaintiff's arguments, raised for the first time in his reply brief, that the ALJ did not provide this Court with a sufficient rationale to support the finding that Plaintiff did not medically equal the listings and that the ALJ cannot rely on the state agency consultant opinions when they did not have the benefit of multiple sources of medical records (Doc. 14 at 1-3). *See Hoyt v. Kijakazi*, No. 1:21-CV-

8

00030 JAR, 2021 WL 5919129, at *6 (E.D. Mo. Dec. 14, 2021) (citing *Bearden v. Lemon*, 475 F.3d 926. 930 (8th Cir. 2007)).

### B. RFC

Plaintiff argues rather summarily that the RFC failed to include Plaintiff's need to elevate his legs (Doc. 10 at 5). The ALJ found: "The record … does not include a requirement for the claimant to keep his leg elevated, or at what level, and the edema improved with medication compliance which, as noted, was less than full" (Tr. 18). The only medical finding indicating that Plaintiff should "elevate his leg" is from before the relevant disability period in May of 2019 while Plaintiff was still living in England and his diabetes was even more uncontrolled (Tr. 664). *See also* Tr. 877-82 (describing uncontrolled nature of Plaintiff's diabetes). There is no indication in Plaintiff's medical records that he required leg elevation during the relevant disability period. The Court finds no error in the ALJ's failure to include a need to elevate his legs in Plaintiff's RFC.

### V. CONCLUSION

For the foregoing reasons, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED, with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 15th day of March, 2023.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE

9